UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RAYMOND McGRAW,

    Plaintiff,

    v.

HYATTE, PAYNE, WEXFORD HEALTH
CARE SERVICES, MORADAT,
KLOENZLI, FRYE, IVORS, KIM MYERS,
and COURTNEY R. BRIDENTHAL,

    Defendants.

CAUSE NO. 3:23-CV-260-JD-SJF

OPINION AND ORDER

Raymond McGraw, a prisoner without a lawyer, filed an amended complaint. ECF 34. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In 2016, McGraw had emergency surgery for a non-healing wound on his back. Cultures of the wound revealed that he had Methicillin-resistant Staphylococcus aureus ("MRSA"). ECF 34 at ¶ 2. He was discharged from the hospital to Miami Correctional Facility with an order to receive six weeks of the antibiotic Vancomycin intravenously.

*Id.* at ¶ 3. McGraw alleges that he did not receive the full six weeks of antibiotics, but this allegation was addressed in the court's earlier screening order, which concluded this allegation was both factually unsupported and could not be timely challenged in a lawsuit filed in 2023.[1] *See* ECF 31 at 3.

When McGraw was released from the infirmary on March 3, 2016, he was told that the MRSA was gone but his skin was colonized with staph aureus, which he would have for the rest of his life.[2] ECF 34 at ¶ 4. McGraw alleges that since then, he has had recurrent outbreaks of boils, lesions, sores, and cysts on his face, left ear, and buttocks. *Id.* at ¶ 5. These breakouts caused him pain and mental anguish and affected his sleep. Although any claim regarding the IV treatment following his surgery was untimely, in the previous screening order, the court determined McGraw should be given a chance to file an amended complaint focusing on the treatment he received for the recurrent breakouts. He complained about the treatment he received, but the complaint was vague about how each defendant was involved in his medical care and what deficiencies McGraw alleged about his care. ECF 31 at 4-5. Therefore, McGraw was

---

[1] According to the complaint, McGraw was in the infirmary from January 20, 2016, to March 3, 2016, which adds up to 43 days—sufficient time to complete six weeks of antibiotics. ECF 34 at ¶ 7. Additionally, with his amended complaint, he included a copy of the medication logs for January and February 2016. ECF 34-1 at 2-4. Those records show that McGraw began receiving Vancomycin on January 21, 2016, through February 29, 2016, when the medical records end, totaling 41 days. *Id.* The March records are not included, but it is not a reasonable inference that medical staff stopped the treatment one day early.

[2] "*Staphylococcus aureus* (staph) is a bacterium commonly found on the skin and in the nose of about 30% of individuals. Most of the time staph does not cause any harm, but it can sometimes cause infections." CENTER FOR DISEASE CONTROL, *Staphylococcus aureus* Basics, https://www.cdc.gov/staphylococcus-aureus/about/index.html (last visited Mar. 13, 2025). There are several different types of staph, one of which is Methicillin-resistant Staphylococcus aureus ("MRSA"), notable for being resistant to many types of antibiotics. *Id.*

2

allowed to file an amended complaint that focused on whether he could state a timely claim based on the treatment he received for his recurring breakouts.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

3

*Id.* at 697-698 (cleaned up).

The law has "identified several circumstances that can be enough to show deliberate indifference" by a medical professional. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). "First, and most obvious, is [an] official's decision to ignore a request for medical assistance." *Id.* Second, an inmate can provide evidence the medical professional "persist[ed] in a course of treatment known to be ineffective." *Id.* at 730. Third, an inmate can provide evidence of "an inexplicable delay in treatment which serves no penological interest." *Id.*; *see also Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009) (state employees could be liable for four-day delay where prisoner complained his intravenous therapy was causing him pain).

McGraw identifies several aspects of his treatment that he says constituted deliberate indifference. First, he complains that medical providers continued to treat him with different antibiotics that didn't work. "Doggedly persisting in an ineffective treatment can establish deliberate indifference." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022). However, the fact that the medical staff tried different antibiotics goes against an inference that the medical providers were deliberately indifferent to his condition. "Evidence that the defendant responded reasonably to the risk, even if he was ultimately unsuccessful in preventing the harm, negates an assertion of deliberate indifference." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022). Because the medical staff tried different antibiotics to clear up his infections, it is not reasonable to infer that they persisted in a course of ineffective treatment or showed

4

unconcern for his welfare. And there are no allegations that the antibiotics they prescribed him were a substantial departure from accepted practice in treating a staph infection.

McGraw next complains that the medical staff waited too long to take the culture of his wounds that showed that his staph infection was MRSA. It was known in 2016 that his skin was colonized with staph aureus, though the amended complaint and attached exhibits are silent about whether McGraw experienced breakouts before 2020. McGraw provided his medical records going back to early 2020, which show that as of that point, he was battling skin infections thought to be caused by staph aureus. *See generally* ECF 34-1. On July 6, 2020, the medical provider, Dr. Noe Marandet, ordered a culture that never happened. *Id.* at 81-84. McGraw submitted a medical request on July 19, 2020, asking about the results of the culture, and he was told there were no culture results in his medical record. *Id.* at 23. When he saw Dr. Carl E. Kuenzli on September 23, 2020, to ask about the culture result, the notes from that visit do not reflect that Dr. Kuenzli followed up on the missing results or ordered another culture to be taken. *Id.* at 91-93. McGraw saw Dr. Kuenzli again on January 4, 2021, and the doctor noted that "Blood C & S from a month ago pending" and he noted that he would "check on recent labs." *Id.* at 97-98. However, it was not until he saw APN Kimberly Myers on January 14, 2021, that another culture was ordered that revealed MRSA. *Id.* at 99-101. Based on this, McGraw has stated an Eighth Amendment claim against Dr. Kuenzli (identified in the complaint as Kloenzli), who was aware that there was a problem with the previously ordered cultures but took no action, resulting in a seven-month delay in

properly diagnosing McGraw. McGraw, however, may not proceed against Dr. Marandet (identified in the complaint as Moradat) or APN Myers. There are no allegations that Dr. Marandet was aware of any problem with the culture he ordered, and APN Myers responded reasonably by ordering another culture.

Finally, McGraw alleges that once it was determined that he had MRSA, medical staff should have sent him to a specialist. Notably, however, when he was transferred to a new prison in June 2021, just months after the MRSA diagnoses was confirmed, the providers there also treated him with different antibiotics, without referring him to a specialist. The provider there treated him with different antibiotics, including the oral antibiotics Bactrim and Clindamycin, and then Ceftriaxone injections. ECF 34-1 at 156, 157-58, 161-63. "[I]f the need for specialized expertise either was known by the treating physicians or would have been obvious to a lay person, then the 'obdurate refusal' to engage specialists permits an inference that a medical provider was deliberately indifferent to the inmate's condition." *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014). There are no plausible allegations that it was deliberate indifference for his medical providers at Miami to continue to treat him in the prison with antibiotics without seeking a specialist's opinion.

Finally, although McGraw may proceed against Dr. Kuenzli, he does not state a claim against the other named defendants. As discussed above, there are no allegations suggesting that Dr. Marandet and APN Myers were deliberately indifferent to McGraw's condition. He sues two healthcare directors, Mrs. Frye and Mrs. Ivors, but does not explain in his complaint how they were involved in medical decisions

regarding his case, and they cannot be held liable based solely on their positions as supervisors. *See Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." (internal citation omitted)). The same reasoning applies to Warden Hyatt and Deputy Warden Payne, who cannot be held liable based solely on their supervisory positions at the prison. Nor does McGraw explain why he sued Nurse Courtney R. Bridenthal, so there is no basis to conclude she was personally involved in any alleged constitutional violation. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (noting liability under 42 U.S.C. § 1983 requires personal involvement in the alleged constitutional violation). Finally, Wexford Health Care Services, the private company that provided healthcare at the prison during the relevant period, can be held liable only if a company policy was the "moving force" behind his injuries. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235-36 (7th Cir. 2021) ("[A] *Monell* plaintiff must show that some municipal action directly caused him to suffer a deprivation of a federal right, and that the municipality took the action with conscious disregard for the known or obvious risk of the deprivation."); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Wexford "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). No such policy is apparent from the allegations in the complaint.

For these reasons, the court:

7

(1) GRANTS Raymond McGraw leave to proceed against Dr. Carl E. Kuenzli in his individual capacity for compensatory and punitive damages for deliberate indifference in September 2020 to the missing culture results that would have diagnosed MRSA earlier, resulting in a delay in McGraw receiving proper treatment in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Hyatte, Payne, Wexford Health Care Services, Moradat, Frye, Ivors, Kim Myers, Courtney R. Bridenthal;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Carl E. Kuenzli at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 34);

(5) ORDERS Wexford of Indiana, LLC to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Dr. Carl E. Kuenzli to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 13, 2025

/s/JON E. DEGUILIO  
JUDGE  
UNITED STATES DISTRICT COURT